Okay, the next case today is number 24-2207 International Security against Dana Berry and Benjamin Parsons. Mr. Piccolelli. Good afternoon, may it please the court, my name is Nick Piccolelli from the Delaware Department of Justice on behalf of the appellate's defendants below, Dana Berry and Benjamin Parsons. I would like to reserve three minutes for rebuttal. Appellates bring this appeal after the district court below reserved decision on their qualified immunity defense at summary judgment. Specifically in a single sentence of a one-page order, the court reserved decision as to qualified immunity issues of fact e.g. whether an emergency existed that required resolution before the ultimate question of qualified immunity could be decided. There are two main issues currently before the court. The first one being whether the court has jurisdiction to hear the appeal pursuant to the collateral order doctrine. The second being whether appellates are entitled to qualified immunity. The answer to both questions should be yes. The collateral order doctrine requires that an order be conclusively determined, I'm sorry, conclusively determines the disputed question, resolves an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment. That requires that it be a legal question. And we're in a situation like this, you have a district court that's denied qualified immunity, implicitly at least, at summary judgment. We have a supervisory rule under Forbes that requires a district court to identify the undisputed facts so that we can make a determination about whether we've got a legal question and can ascertain whether a right is clearly established. We don't have, as you pointed out, it's so cursory here, we don't have that sort of finding by the district court to look at. Does that mean we should just send this back and have the district court proceed? Proceed with deciding summary judgment, Your Honor? Sorry if I misunderstood. Either proceed with fact-finding, where depending on what the judge came up with, perhaps you'd want to, you know, renew your appeal, or proceed to develop the facts necessary at trial. There's certainly multiple options. One of them being for the court, if Your Honor is remanded, for the court to essentially further explain its decision. That would be, I think, one option that it would at least clarify the court's order. The other option, because it involves qualified immunity, because we have undisputed historical facts, this court could consider a question of law as to whether qualified immunity applies to the appellants. Since we didn't get that from the district court, can you identify for us what you view as the undisputed facts that make the relevant right here clearly established? Yes, Your Honor. There are, as identified in the briefing... Not clearly established. I misspoke. They're essentially, and I've summarized a couple, but I've identified 14 undisputed facts, which I think there might have been 17 technically in the briefing, but one being that Delaware law required international to use only licensed security guards. Delaware law also required international to submit monthly rosters detailing the agency's guards and assignments. International had a history of using unlicensed security guards for years before this particular incident. On March 5th, 2020, Appellant Barry learned from a former international employee that the agency was again using unlicensed guards and not reporting all of its locations. Appellant Barry confirmed that it was not the first time that this had happened. Appellant Barry immediately contacted international's president and sole executive, Alfred Izquierdo, regarding the same, and he wouldn't answer questions. What is different here, now that we have some discovery, since we addressed that the first time around in barrier one? So the two differences being the standard of review that's applicable with the motion to dismiss standard being, I think, a little bit more forgiving to the plaintiff. The other major difference that I noted based off this court's prior decision was in that decision, the court identified that Appellant Barry didn't go to international's sites until the next day after the conversation with Mr. Izquierdo. We now know that she immediately went to the site that was identified, not immediately, she had to drive there. But as soon as she found out that day, she drove to the site and determined that one of the security guards was not licensed and that his replacement was also not licensed. She also went to the SOFI site, which was unreported. So that is a significant distinction between this court's prior decision and the facts that we know now. Is it your argument that the presence of unlicensed security officers is ipso facto an emergency? By itself, admittedly, it seems innocuous that an unlicensed security guard could rise to the level of an emergency. Why don't you say it's a combination of factors? Well, that's what I was driving at. That's the way I see it. And I'm happy to be persuaded otherwise. But to me, the answer is it depends. So Barry goes to the site. She says, hey, show me your credentials. I don't have a license. Okay. I mean, I don't have a security license. I can't produce that. Who are you? I'm not going to tell you who I am. Starting to feel like we're headed toward an emergency maybe, right? Why wouldn't the person provide identification? Person provides identification. You have a conversation. The person says, I used to be certified, but my certification lapsed. So why isn't it very fact dependent as to whether there's an emergency? And the easiest case, of course, is Barry goes to the site. Do you have a license? No, I don't. Who are you? And the person ends up being some heinous criminal or something where there's a valid arrest warrant for that person. That's an obvious emergency, right? But why isn't it highly dependent based on the facts on the ground rather than just the status of licensed or unlicensed? I think it's certainly important to consider the facts on the ground. But one of the biggest issues is when they're unlicensed, there's essentially no way to determine at that moment. Of course, they can, Pell and Barry could ask, but there's no way to verify it in that moment. So you have an officer, especially under these circumstances, on duty. And the Delaware State Police Section can't determine exactly that person's qualifications. So it's not simply, they could be a felon, which I believe one of the officers was determined to be, had a prior criminal history and could not have been licensed. But did Ms. Barry know that when she made the decision to call her supervisor and say, pull this license on an emergency basis? My understanding was yes, that she determined that day. Okay, but that day. But so when you were going through the undisputed facts, you said there was a history of unlicensed guards. And Ms. Barry verified that there were two unlicensed guards at SoFi. And my understanding was that that was the end of your list of undisputed facts. But are you saying that what she learned later in the day also went to the determination? So there were, I believe, two different sites that were visited. One of them, there was an unlicensed officer, and his replacement was unlicensed. And at another site, there was an unlicensed officer, and he could not have been licensed because he was a felon. So the reason why I'm asking about the timing is because the first site visit that was SoFi, that's where she found the unlicensed officer and the replacement was coming on, and he was also unlicensed. And then according to her investigative narrative that's in the appendix at 619, it was right after the visit at SoFi that she called in to the Ashley Burgess and said, pull this license. Advise the company that your license is placed under an emergency suspension. And so anything that she learned after that would potentially be extraneous to like the question of whether there was an emergency when Ms. Berry made that call. I'm not sure if it would be extraneous or adding to the... Part of the basis for the emergency is that the appellant Berry discovered these facts and was, they were egregious enough to warrant an emergency suspension. And then further investigation occurred to determine how much more egregious the violations were. Sure. But I mean, I think isn't the question whether when she made the decision to pull the license on an emergency basis, there was an emergency. And at that point, she only knew what she knew when she made that phone call, which was unlicensed guard, unlicensed replacement coming on to replace him. I understand the point that you're making. I think there were other facts that also went into her analysis, as well as in those being that she called the principal to ask further questions and he wouldn't answer. Said he wanted to talk to a lawyer. Is it your argument that the principal saying he wanted to talk to his lawyer is an emergency? Creates an emergency? No, Your Honor. Certainly it's not that he... What other facts do you have that would help you get over the emergency? And just to take a step back, we're talking about emergency because, as I understand the way the Delaware statute works, if you're going to pull the license without notice and opportunity to be heard, there has to be an emergency, correct? Yes, Your Honor. It's...  So the question of emergency is really case dispositive here, right? Yes, Your Honor. Okay. So the district court thinks there are disputed issues of fact. As I understand your briefing, what you're saying is, no, it's not really the facts that are in dispute. What's in dispute is the legal conclusion of emergency, no emergency. Yes, Your Honor. Okay. That sounds like a fact question that is disputed. I thought, qualified in unity, you were making an argument to us that the right was not clearly established. That is one factor, Your Honor. I just see that my time has expired. And that's distinct from whether there actually was a violation, right? Yes, Your Honor. Because of qualified immunity having two prongs, whether a constitutional right was violated and as well as whether it was clearly established, the emergency and the test set forth in the Ellesmere case is one part of it. And based on that court's case that was followed by the court in the motion to dismiss decision, the whether an emergency was present was a legal question. Is the relevant moment in time when Barry makes her initial recommendation or when Parson signs the letter? When the letter was signed and sent to Mr. Esquiredo. What does the record reflect about other communications between Barry and Parsons before he signs the letter? I believe... I'm not 100% clear on that, Your Honor. And to be frank, focused on the undisputed facts, because I think some of those facts and discussions that were occurring while the investigation was taking place, I'm not sure if those were undisputed for purposes of this appeal. So I think that... So we know from... There's some evidence in the record that the first site visit to SOFI Incorporated was at approximately 3 p.m. We have an email from... An email alerting National Securities Principal of the suspension at 521 p.m. So we don't know exactly how much information was transmitted to Parsons between 3 p.m. and 521 p.m., right? But we have reason to believe that at a minimum, it was the two unlicensed guards at SOFI. But it sounds like the state has known for years that this company had unlicensed guards and never decided to pull the license based on that. And so the only additional fact that we know was transmitted before 521 p.m. is that the principal was unwilling to answer questions. I believe that's correct, Your Honor. Okay. But it is important, I think, to note just briefly, if I may, that those were direct violations of Delaware law, having unlicensed security guards as well as unlisted locations contributing to the emergency because an investigation was essentially... ...not barred, but made complicated by the fact that not all of the locations were reported. So why wouldn't any reasonable officer know that it violated due process to amend the suspension of a license given the undisputed facts? The interplay there, I think, is with the Ellesmere case and the difficulty or the major differences between that case and this one, as well as the Supreme Court's requirement to define whether law is clearly established with specificity. So while the Ellesmere case set forth the standard, the due process standard when an emergency is present, it was under a completely different set of facts with it being condemnation of apartment buildings ...by inspectors versus here having security guards that are regulated by the state. It's just, it's too different and too much to expect a state employee to differentiate between not just the test, but the application of that test to the particular circumstance. And Supreme Court precedent, I think, has affirmed repeatedly that it needs to be defined with particularity, not just here's the test, every state employee should know it, but here's precedent applying that test with facts close enough for a state employee, a state officer to be able to understand that. And the facts are just too different here for it to be clearly established and therefore qualified immunity should apply. Clearly, there are different facts in Ellesmere, but the question in my mind is, are there relevantly differential facts? I mean, what's different is this is security guards in office buildings, Ellesmere is apartment complex. Here, we're dealing with lack of license. There, there's a condemnation. But isn't the relevant takeaway from Ellesmere that you have to give someone a pre-deprivation hearing if there's no emergency? Of course, Ellesmere, the holding is the inverse of that, right? No violation, post-deprivation hearings suffice, but that's because there was an emergency. Is it your argument that because this case presents the inverse of that, that that doesn't cut the mustard under Plumhoff v. Ricard and all the other Supreme Court qualified immunity cases? In part, Your Honor, yes. That Ellesmere upheld an emergency there plus the other differences, that being mold present and town inspectors versus here, security guards, and it's important to look at what types of emergencies can arise with security guards and suspending licenses. It's just, we identified in the briefing that it's very difficult to pin down if this does not constitute an emergency, blatantly violating Delaware law, if that doesn't constitute an emergency, what does? Well, now you really have me concerned because if, if, quote, blatantly violating state law allows a citizen or a corporate citizen to be deprived of all of their rights and benefits without a hearing, that seems to open up a Pandora's box. I mean, that's so inimical to our system. Our system is all about notice and an opportunity to be heard before you lose all those important things. So, I mean, I guess I understand certainly the principle that if there's an emergency, the government needs to act first and give notice and an opportunity to be heard second. But isn't it equally obvious that when there's no emergency, the government has to give notice and an opportunity to be heard first before taking away people's rights? Your Honor, that is a correct statement of due process. But to add to, it's not just a blatant violation of state law, one that's two parts. Having unlicensed security guards, having unlisted areas where those guards are being placed, adds to the emergency. Having a principal who is required to report its locations and to employ licensed security guards refusing to answer questions and then discovery that those things were occurring. All right. And those seem to be very granular facts. That gets back to my initial question, which is, is this an ipso facto thing or a totality of the circumstances thing? And it sounds like you're saying it's a totality of the circumstances thing, which I agree with if that's what you're saying. But I'm not sure the district court was wrong to say that there are disputes here regarding the totality of the circumstances and whether this bundle of facts adds up to an emergency. And I'm still, quite honestly, struggling with whether an emergency is a legal conclusion or a factual conclusion. How do we know that it's a... If it's a factual conclusion, the district court didn't argue. You have to argue it's a legal conclusion, right? Yes, sir. So how do we know... Help us with that. How do we know that whether or not this bundle of facts adds up to an emergency is a legal question rather than a factual conclusion? I think needs to unpack the emergency test a little bit more. So it's not just that whether there was an emergency, it's whether the decision maker had a reasonable belief that an emergency was present and that there was not an abuse of discretion. I'm sorry, there's another part to that test, which I'm skipping over. But... All right, I think I'm with you on that. If the state actor reasonably but erroneously believes there's an emergency, they're probably going to get qualified immunity. Qualified immunity is about state actors, covers good faith mistakes, right? But here, what facts do you have in the short window where Barry made this decision and Parsons issued the letter? What do you have other than unlicensed, history of unlicensed? Is Chiarito non-cooperative? Not reporting locations where International was deploying guards. Wanting to talk to his lawyer before he had that conversation. It just sort of... It sort of seems like you want to talk to your lawyer. Okay, I'll show you. I'll punish you by pulling the trigger here on a deprivation before there's ever a hearing. I don't understand the facts to show that, Your Honor. The undisputed facts show that it was not about vindictiveness or anything against, you know, based on personal feelings. And it was not about Mr. Izquierdo wanting to talk to an attorney. It was that he was asked questions about things that he's mandated by law to provide. And he didn't respond, right? Correct. Because he wanted to talk to his lawyer before he responded. Correct. But I don't believe the... And I understand that the parsing that, Your Honor, is the distinction Your Honor is making. But I think it's important to emphasize that these things are required by law for him to do. It's not just... It's using unlicensed security guards, not reporting locations. If we were to say... If he's to say, well, I'm not going to tell you what locations I have them at. I want to talk to my lawyer first. He's required by law to report what locations he has security guards at. So there's a distinction, I think, there. It's not about him wanting to talk to a lawyer. It's about him being questioned about his compliance with law and him not answering. Is there significance to the fact, undisputed, that unlike when this was up before us in Berry 1 and the complaint, that the suspension wasn't immediately upon receiving the phone call. It was after going to at least one location, determining that there had been multiple violations using unlicensed guards. And the location, and later in the day, locations, including a financial institution and a housing project. Does that raise particular safety concerns in your mind that should contribute to how we think about what a reasonable officer would believe based on the undisputed facts? I think it does play into it. And in the briefing, tried to kind of give some examples of why that was important. And I know there were examples about officers sleeping on duty, appearing high, and those sort of things where appellees kind of attributed that not to the emergency. But some of the other examples being given about public trust or reliance on that officer being licensed. And because the state of Delaware is licensing those people, that the public could rely on those representations to their detriment, or that the officers could act, could violate the law further by committing actual crimes, relying on that false sense of licensing. All right. Thank you. You've reserved time for rebuttal. Let's hear from Mr. Green. Good afternoon, Judge Hardiman, Judge Krause, Judge Freeman. May it please the Court. James Green from CITES, Van Ock, Joplin Green. I represent Plano Papelli International Security. Your Honors, I'd also like to introduce to the Court Mr. Alfred Izquierdo, who's in the courtroom with me today. This is a dispute about a pre-deprivation, a pre-hearing deprivation under the guise of an emergency, where no emergency existed, neither in fact, nor under the belief of the  We've talked a lot about emergency today. Emergency under the act with which the suspension was ordered is not a nebulous concept. Under the act, under section 13 of the act, 1308 of the act, excuse me, emergency is defined. It is a situation that requires immediate action to protect the health and safety of the public. That is a factual determination. There's the who, the what, the when, the where, and the why, and the hows of whether a certain event constitutes, or whether a certain situation constitutes an emergency. So can you pick up with where my last question left off with your colleague? And that is, we have, in this record, in terms of undisputed facts, now that there's been discovery, that this wasn't a phone call about a particular instance or a single report, but with the research that having unlicensed guards as violation went back to 2012. And unlicensed means their qualifications to provide security, provide the safety that employers hire a security guard for, those folks aren't being evaluated for their qualifications, even a background check, for example, for a criminal record. And they're covering places like banks, financial institutions, like SOFI, housing projects, where security is particularly important. When you consider those facts, why wouldn't a reasonable officer, why wouldn't it be within the realm of a reasonable officer's belief that there was an immediate threat to public safety of continuing to have these unlicensed and unqualified officers in those kinds of locations? I don't think it's just a reasonable officer. It's also, it's an officer who's charged with administering the act, who works for the section. But that, I mean, we're looking at officers charged with administering the act and the decision about whether something is an emergency. I mean, we have from Ellesmere, we're supposed to give deference there, right, to the determinations made about emergency situations, because you wouldn't want to chill government officials from taking immediate action if there are indicia that it may be necessary, right? Yes, but this officer knew what the act says, and this officer knew that in the act, there are other provisions that say, when you don't have a license, go meet with the board and we'll tell you what you need to do. When you don't disclose your locations where you're supposed to operate, there are going to be repercussions for that, and we'll talk about that. Well, that may make sense if you have a one-off violation, but when it comes to light that it's, this is occurring in multiple locations over years, and that those locations include places where security is particularly important, like banks and housing projects, how would a reasonable, would it be clear to any reasonable officer that an immediate suspension of the license under those circumstances violated due process? That officer knows that it's not that officer's obligation to do that. That officer can report the violation, and then they can take it before the board. That officer knows that not having a license is not defined as an emergency under the act. That officer knows that these are not armed security guards. They didn't have a license to possess a weapon, and I think the history of what happened before the section in 2012 and 2013 and 2014, 16, and 18, or maybe not 14, shows that the section already considered these very same violations. International had a history of not registering every single security guard for every single location, and time and time again, the section said, okay, do it next time. So when Officer Berry reviewed this file, she saw that. She saw that before the section didn't determine that this was an emergency, why does it rise to the level of an emergency now? Is it the location? Is it because you're working at SoFi? Well, it's not a bank. It was an office building. Is it a housing complex? When these security guards, well, they're not, they're unarmed. They're really receptionist for all intents and purposes. I think that this court already sort of considered in Berry 1. They greeted people. They answered the phone. They took mail. These weren't security security guards. They were manning the building and making sure that people didn't go in that weren't supposed to be there for the most part. So not having a license doesn't rise to the level under if it's reoccurring or on a specific instance. It doesn't rise to the level of immediate threat to the public safety. So a reasonable officer should expect that when you're dealing with the licensing of security guards, that that's really the licensing of people who are providing administrative duties and receptionist duties, not providing security. I think maybe in a nebulous concept, that's a fair understanding of what an officer might consider. Hey, you're a security guard. And therefore, all you're concerned about is with safety. But we're looking at the act here. And I think it underscores every discussion we have is what does the act say? And the act says, if there is no emergency, you cannot take away this property without a hearing. And when you are, you are the security guard. You are the security officer. We can't take that away without a hearing. So we're always looking at what that is. So what's the case law that would make it clear to every officer that this is a clearly established violation of due process, given the facts that are undisputed in the record? I mean, it's Ellesmere. I have to say it's Ellesmere. The court already said it's Ellesmere. Yeah, I was going to ask you about that. You mentioned several times in your brief law of the case. And I'd like you and your friend on the other side to address for us what Barry 1 says about emergency, what Barry 1 says about clearly established law, and whether those things that Barry 1 said are law of the case and binding on this panel. What Barry 1 said about emergency is not law of the case because that's a factual dispute. At Barry 1 stage, we're at the motion to dismiss. But we can glean certainly from what Barry 1 said about the factors that would go into determining whether emergency existed apply here because everything that was said, except for that one little exception about the timing, which I don't think is relevant, everything that was said in Barry 1 turned out to be the case under the undisputed factual record. So in that sense, I think Barry 1 is persuasive. It's helpful. It's not necessarily binding. But I do think with regard to what if there's a clearly established right and that Ellsmere applies here, I think that's law of the case because... All right, point us to the language in Barry 1 that supports what you just argued. With respect to the clearly... Law of the case, yeah. Well... Clearly established law. Because, I mean, I read that in your brief and I don't know that you're wrong, but I don't know that you're right either. What you argued in your brief is that the Third Circuit Court of Appeals has already said that it was clearly established law that if there's no emergency, you cannot take away the company's rights before noticing an opportunity to be heard or provided. It talked about how... What Ellsmere holds, and we said this in our brief, and this is what Barry 1 said, there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist. If there is not that competent evidence, this is what Ellsmere says, if there's not that competent evidence, and I'm going to take it back to what Judge Narika said, that's what we're evaluating. What's the competent evidence? That's the dispute of fact. If there's not that competent evidence of that emergency does exist, then you cannot take away... You cannot use an emergency to take away a property without a hearing first. There's nothing ambiguous in that statement in Ellsmere. So when someone... Whether it's a clearly established right, Ellsmere said, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion. There's nothing for an interpretation about that. What we have to determine is whether the decision was arbitrary, question of fact, or an abuse of discretion, and I think that's what the facts lead us to conclude. So Ellsmere tells us that the facts in that case were sufficient to view it as an emergency. What does it tell us about the minimum necessary to view something as an emergency? What are the minimum necessary factors that would lead us to... Clear to every reasonable officer that the facts here didn't rise to the level of the minimum necessary. Not whatever was sufficient in Ellsmere, but the minimum that would be an emergency. Ellsmere's helpful because it uses the word emergency and not what emergency is defined in the act here. So a reasonable officer reading Ellsmere would say, I can't use the excuse of an emergency when I know there is not one, or when it's unreasonable to conclude that there's an emergency, to take away a right, to take away a property, to condemn a building, to take away a license. How would you define the right at issue here? What is the right that you say was clearly established? The right to contract, the right to pursue a living, the right to... The right to not have those things taken away without a hearing. Yes, I don't think it's... All right, but I'm a little confused now about emergency because I tracked you when you gave us the definition from the state law, but I'm wondering if the state law can really dictate the constitutional line. Because imagine, what if we've got Ellsmere's reference to emergency, and what if Delaware state law defined emergency to be... An emergency is hereby defined as any time an officer reasonably believes that a company is not in compliance with the rules and regulations of the security law. That's not an emergency, right? But they're defining it as an emergency. So what worked, I guess what I'm asking is, what worked is... I assume you agree, that can't be the law, that can't define the constitutional rights, because we can't allow state legislatures definitionally to water down constitutional rights. You see where I'm going? I do, your honor. In that situation, if I was representing the defendant trying to get qualified immunity, I would argue the unconstitutionality of the statute. I don't think there's a question that's section 1301, it's sequenced. It's an unconstitutional statute. That's not at issue here. So I think that's where I would take that. All right. So does it mean, though, that the definition of emergency does track with the dictionary definition, that as long as Berry and Parsons knew that they weren't adhering to the state law definition, that they are violating clearly established law? I believe I follow your question. Yes, it's, you know, what's an emergency, both generally and here, and there are some instances where, you know, Berry and Parsons could think that there was an emergency and not declare one. But the emergency as defined in the statute, section 1308, seems like an emergency. Was it imminent risk to the public? Health and safety, I mean, that's, I mean, you can look on the dictionary, that's what it would say. And so here, I don't think that we can go to a hypothetical where a statute could be written worse, but we don't have that situation. If we rule in your favor, what does the trial look like? What sort of factual development would you endeavor to show to the court or the jury that hasn't already been developed in discovery? It's a good question, and I was actually thinking that we could have cross-moved for summary judgment on the unreasonableness of the indication of the emergency procedure. So I think a lot of it looks like what's the state of mind, what was, we're going to talk to Mr. Izquierdo and his experience with the section, his experience directly on that telephone conversation. Why is state of mind going to matter at trial? Isn't it objective? Isn't it whether, objectively speaking, there was a true emergency? If there was a true emergency, you lose. And if there was a contrived emergency, you win. Under qualified immunity, yes. And I think that's right. I mean, I think it would help the finder of fact. I don't know if it would be as relevant to find objectiveness. But to looking at the factors, we're going to play out exactly what happened. I have, and we're talking with my colleague about what the timing, when the emergency was declared. Summarize it very briefly in the papers. Officer Berry determined, Sergeant Berry determined an issue in emergency before she left her office, before she left Dover. I deposed Sergeant Berry and I asked, at what point was it determined that an emergency suspension should issue? Answer, that was determined even prior to going up there. She wanted to catch international, she wanted to catch Mr. Izquierdo in the act of violating the act. It was vindictive. She had a power. Well, okay. Going there was vindictive? I mean, pulling the suspension is the problem, not going and investigating. She has a duty to investigate, right? No, you're right. That might have been my fault, the confusion. I'm out of time. Go ahead. She had to go there to catch him right-handed. So no, it wasn't, I can't, she couldn't, because he invoked his right to speak with a lawyer and didn't admit, he didn't lie, he didn't admit to not having a licensed guard. So she couldn't then say, gotcha, suspended, because you don't have a license. She had to go catch him. So she sent Corporal Galliani up there, he didn't put his lights on, but he was in Newcastle and he got the claim out early, so the guard wouldn't leave. So when Barry got there, she could say, let me see your license. And when he didn't have it, she could then call Parsons and Captain Parsons would sign what she had pre-drafted, which was the emergency suspension. Doesn't the fact that she went and she conducted this investigation suggest that this was not vindictive? Why, I guess we're just getting into, going down the road of some fact questions that go to whether there really was an emergency or not. But the question for us today is about qualified immunity and whether it would be beyond debate for any reasonable officer to understand, confronted with a report verifying that this was happening multiple times over years, multiple locations, the kinds of locations where there was a concern, dealing with security guards, it would be beyond debate that that did not present a public safety issue that would justify an emergency suspension. It would potentially lead to a public safety issue. I don't doubt that, or I could dispute that. But it's an immediate threat and it's happened over a number of years and no one ever, all the other officers who we can presume have been reasonable in the past, never issued an emergency suspension. So I think the history helps international here because it never rose to an immediate health and safety issue. Sure, and the reasons that Captain Parsons and Sergeant Barry gave in their depositions, that not having a license could lead to this, not knowing where these officer or these employees are located could lead to something. Isn't that the answer for qualified immunity? If it could be a public safety problem, then it's not beyond debate for a reasonable officer to think that, right? I don't believe so. And I have to go back to the statute under which the emergency was issued. I don't think it's, the facts are important. And Ellesmere says you can't issue an emergency suspension when you don't have an emergency, you need a hearing first. Barry knew that and she can't issue an emergency suspension unless there is an immediate threat to the health and safety of the public. But Ellesmere doesn't, it doesn't involve security guards or the state police or this board or even professional licensing for that matter. Putting that case aside, what is the Supreme Court case, the consensus of cases from courts of appeals that would show it's beyond debate that this would justify that the facts here, undisputed facts here would justify an immediate suspension for public safety concern with a hearing to follow? Putting aside Ellesmere, I don't know what that other consensus of cases look like. But I believe Judge Hardiman alluded to this in the beginning. But under Ascroft v. Al-Kid, qualified immunity does not protect those who knowingly violated the law. We're going to show if we need to, it gets there, that Officer Barry knowingly issued the suspension when it wasn't justified. And I think that she's not entitled to qualified immunity on that basis as well as the basis that if she was reading Ellesmere, she could determine also. What's the responsibility in terms of a due process claim for someone who makes a recommendation but is not the decision maker versus the decision maker? She had a power trip, right? What's her responsibility? Her responsibility is to know that she can't make that determination. She can make the, well, she couldn't make it. The director had to make it. This is Captain Parsons made that determination ultimately, but he rubber stamped her drafted letter. She was aware of the statute and she knew that unless something happened, the international would get a hearing and he wouldn't get, he would be reissued the license. He might not get a fine. And I believe that, it doesn't matter what I believe, but it can be shown that Sergeant Barry needed to, thought Izquierdo needed to be, and the international needed to be punished. I understand your argument about her mental state. I'm asking, what is the state of the law as to someone who simply makes the recommendation, but is not the figure who's authorized to or actually does make a decision to say, take property or to suspend a license? Fair point. I understand your point. So is, I believe you're asking, is Barry entitled to qualified immunity because she was not the director? Is that clearly established itself as a procedural due process violation to make a recommendation? I think, I believe the facts will play out that it wasn't merely a recommendation. She was involved in the decision. It was her investigation and it was actually her determination. Although ultimately it wasn't her authority. It had to be ratified by Parsons. It had, yes. It had to be, because under the act, it says the director may make a finding of fact that there is an emergency and issue an immediate suspension. But at trial, you'd try to develop that Parsons relied on Barry's findings, recommendation, et cetera. We will, Your Honor. I think in his deposition, that seemed clear. And I think we will pursue that at trial in questioning Parsons and Captain Barry,  All right. Thank you very much, Mr. Green. Let's hear rebuttal. Thank you. Mr. Piccolilli, I'd like to direct your attention before you start to the question of law of the case. And I'm going to read to you what was written in Barry one. And this is at page nine of the opinion. If you have it, you can look it up. International security has demonstrated that the right it describes was, quote, clearly established, end quote, so that a reasonable official would appreciate the lawfulness of his actions. We agree that the case it cites in support, Ellesmere Park Club LP versus Town of Ellesmere, clearly establishes this right. My question to you, sir, is that even assuming that I think, personally think, that Ellesmere is not clearly established law, how do I get out from under what I just read? A few reasons, Your Honor. One being the stage of litigation that this decision was issued under, motion to dismiss, where the court has to view the complaint in favor of the plaintiffs. And as often, I think this decision shows that the court really relied on what the plaintiff was contending, gave a lot of deference to them, to him. I'm sorry, to International. The other piece of it not being the law of the case is that at least one of the facts was wrong. I'm looking at the prior to that analysis where the court is determining whether an emergency existed, one of the facts that the court relied on was that Ms. Berry didn't contact the organizations that contracted International until the next day. We now know that she went directly to at least one location, I believe it was two locations, that day. So the factual basis for the court's analysis in Berry 1 is not the same. Did Berry 1 emphasize that fact? Yes, Your Honor. I can quote it. Yeah, whereabouts are you on that? I'm looking at the Westlaw printout. So it's on page three of Westlaw. I'll try to start to quote it. Hopefully, you can find it. Despite the emergency, it was not until the next day, March 6th, that Berry began contacting organizations that contracted with International Security about its emergency suspension. It was viewed in the light most favorable to International Security that the officers waited until the next day to contact the organizations to remove the security officers. Suggests that the officers did not believe that International Security's possible use of unlicensed security officers constituted an emergency requiring immediate action. All right. So that pleaded fact that it was the next day was not borne out in discovery. What did discovery show? It showed that Berry went that day, the day that she learned International may be using unlicensed guards. She went immediately that day to two of the sites and determined that it was using unlicensed guards and not reporting all of its locations. What's the significance of that in terms of the point that Mr. Green made, that in her deposition testimony, she's acknowledging she's already made the decision even before those visits? I think that's somewhat of a jaded view of law enforcement in general. I think most law enforcement might get a report and think, if this is true, I'm going to charge this person. I think would be a pretty common analysis. The fact that she then went and did her investigation and affirmed her suspicions is what law enforcement officers do. It's the same- Well, but charging is different than suspending, right? I mean, clearly charges, I think everyone agrees, charges were warranted here. They were not in compliance with Delaware state law. So we're really just talking about pre-deprivation or post-deprivation hearing. I agree. Charging versus wanting to suspend. But that I think is just, that was just maybe a bad analogy. The facts that were reported to her- But didn't she say the decision was already made before she left, before I went up there? What exactly, maybe you could quote what she said in the deposition. I don't have- I thought she said before. Mr. Green can hand it to you there. So the question was, at what point was it determined that an emergency suspension should issue? Yeah, so we're not talking about charges. We're talking about suspension. She made the suspension decision before she went up there, right? So the answer was that was determined even prior to going up there, yes, too. And then also, at page nine, in the same paragraph I was reading from before, our opinion says, unlike in Ellesmere, Barry and Parsons invoked the emergency procedure despite sufficient allegations that there was no need for immediate action to protect the health and safety of the public. And I guess your argument is we get around that because of what you read earlier about the the pleaded fact about immediate action when it- the next day versus going there the day of? That is one fact, Your Honor. I think you can also get around that by looking at the stage of the proceedings and the deference that we're making to the fact that there was no need for immediate action. The motion to dismiss stage to the plaintiff, whereas here we have a fully developed record with pretty significant undisputed facts. And I want to emphasize again the- that the emergency under due process requires it's not just an emergency be present, but that the officer have a reasonable belief and that their decision not be arbitrary or abuse of discretion. The other more deferential test, I think, qualified immunity. Qualified immunity, importantly, is a privilege against trial. That is, I think, significant here. And I'm sorry, Your Honor, are we shaking your head too? No, we're with you on that. That law is well established. It's, yeah, I mean, it's- in fact, it's not just immunity from trial, it's immunity from suit. That's why these are typically seen at the Rule 12 stage. We see some at the Rule 56 stage, but they're quite often come to us at the Rule 12 stage for the reason that you just mentioned. Is your argument that these additional facts that were developed show that it was an emergency or could reasonably be used as an emergency? Or is your argument that these facts that were developed in discovery changed the definition of the right at issue? I don't believe they would change the definition of the right at issue. I'm hoping I'm understanding your question correctly. Maybe I didn't get that. I'm sorry. You had mentioned in your argument earlier that with qualified immunity in ascertaining whether a right is clearly established, that we in the district court are supposed to define that right with precision. Yes, Your Honor. So with these additional facts in discovery, does that provide additional precision in defining the right? Yes. I'll clarify that because I don't believe the Supreme Court has ever said whether a law is clearly established, the specific facts have to be down to the second of the minute of every action that occurred. But there needs to be more specificity than we have this Ellesmere case that had to do with condemning buildings. And we newly defined the emergency standard for due process violations. And now we're going to apply it to licensing decisions for security guards. It's too far of a leap, especially with I think the Supreme Court has recently warned repeatedly that the right needs to be defined with more specificity. I hear you on that. But if we were to agree with you, then would we need clearly established federal law addressing emergencies with regards to security licensing in Delaware and, you know, license for nurses and license for barbers? I mean, like how much, how close does it have to be before when we're dealing with, especially like a sort of general principle about whether there's an emergency or not? I've certainly read some cases that would indicate that it needs to be that specific. I think you can think of a lot of examples where it gets too specific, where it keeps differentiating between nurses, security guards, plumbers. I think it depends on the individual facts of that case. And it would be too much for me to say, oh, if you decide here that state licensing must provide these protections, this process going forward, that it would definitively apply across all state licensing decisions. I think it might be too broad. But I can also see Your Honor's point that there might be some overlap. So I think it would really depend on the individual case, which is also what the Supreme Court is pushing towards. The courts need to observe this more specifically. And if it's been clearly established so that every reasonable officer would understand that, then qualified immunity would not apply. That's not what we have here. And what page are you reading from where Ms. Berry was testifying about when she made her decision? That was page 11 of her deposition testimony from December 5th, 2023. Okay, thank you. Do you happen to have the Joint Appendix page? Yes, I do. Joint Appendix 640. Okay. And I'll note that that was not included in appellant's undisputed fact section. I wanted to focus specifically on those undisputed facts because there are plenty of facts throughout the case that might be in dispute. But the ones relevant to the court's determination of whether there was an emergency and relevant to the court's qualified immunity analysis, whether it was clearly established, those facts are undisputed. I see. Okay, I'm just reading her whole response though. But so the question was, at what point was it determined that an emergency suspension should issue? She said that was determined even prior to going up there. If I found these guards, I would have communicated with the captain and while I was at the location, while I was at SBI. And then I would have contacted him afterwards that there would have been, you know, there's unlicensed guards here. We had to validate the complaint that was filed against him. So it sounds like she contemplated that if she confirmed the tip, she was going to pull the license. Yes, Your Honor. Thank you for noting that. I see it as well. All right. Well, we thank counsel for both sides for the very helpful argument. The court will take the vote.